1  Thomas H. Bienert, Jr., State Bar No. 135311
   tbienert@bmkattorneys.com
2  Anthony R. Bisconti, State Bar No. 269230
   tbisconti@bmkattorneys.com
3  BIENERT, MILLER & KATZMAN, PLC
   903 Calle Amanecer, Suite 350
4  San Clemente, California 92673
   Telephone (949) 369-3700/Facsimile (949) 369-3701
5

6
   Attorneys for Respondent
7  Seila Law, LLC

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  CONSUMER FINANCIAL PROTECTION          Case No. SACV17-1081 JLS
    BUREAU,
12
                                           Hon. Josephine L. Staton
13        Petitioner,

14  v.                                     **OPPOSITION TO PETITION TO
                                           ENFORCE CIVIL INVESTIGATIVE
15                                         DEMAND**

16  SEILA LAW, LLC,
                                           [Declaration of Anthony R. Bisconti Filed
17        Respondent.                      Concurrently Herewith]

18
                                           <u>Hearing Information</u>
19                                         Date:  August 25, 2017
                                           Time: 2:30 p.m.
20                                         Place: Courtroom 10A
                                                  411 W. 4th Street
21                                                Santa Ana, CA 92701
22

23

24

25

26

27

28

# **Table of Contents**

I.   INTRODUCTION AND SUMMARY OF RELEVANT FACTS...........................1

    A.   Summary Of Argument. ..................................................................1

    B.   Procedural History..........................................................................2

    C.   Brief Overview Of The CFPB..........................................................3

II.   THE COURT SHOULD DENY THE PETITION....................................3

    A.   This Investigation Is Unconstitutional. ...........................................3

        1.   The CFPB Is Unconstitutionally Structured. ......................3

        2.   The CFPB Must Be Stricken In Its Entirety. ......................7

        3.   The CID Is Unenforceable Because It Was Issued By An Unconstitutional Agency. ......................................................8

    B.   Even If Constitutional, The CID Exceeds The CFPB's Statutory Authority. ........................................................................................9

        1.   The CID Does Not Provide Adequate Notice.....................9

        2.   The CID Violates The Statutory Practice Of Law Exclusion............10

    C.   The CID Is Unduly Broad And Overly Vague And Seeks Privileged Information And Documents.........................................................14

III.   CONCLUSION......................................................................................16

# Table of Authorities

**Cases** **Page(s)**

*Alaska Airlines, Inc. v. Brock*,
   480 U.S. 678 (1987) ...................................................................................... 7

*Am. Bar Ass'n v. F.T.C.*,
   430 F.3d 457 (D.C. Cir. 2005) .................................................................... 10

*Consumer Financial Protection Bureau v. The Mortgage Law Group, LLP*,
   157 F.Supp.3d 813 (W.D. Wisc. 2016) ........................................... 12, 13, 15

*FEC v. NRA Political Victory Fund*,
   6 F.3d 821 (D.C. Cir. 1993) .......................................................................... 8

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
   537 F.3d 667 (D.C. Cir. 2008) ...................................................................... 6

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010) ..................................................................... 5, 6, 7, 8

*Freytag v. Comm'r*,
   501 U.S. 868 (1991) ...................................................................................... 7

*Gen. Ins. Co. v. EEOC*,
   491 F.2d 133 (9th Cir. 1974) ...................................................................... 10

*Humphrey's Ex'r v. United States*,
   295 U.S. 602 (1935) .................................................................................. 5, 6

*In re Aiken Cnty.*,
   645 F.3d 428 (D.C. Cir. 2011) ...................................................................... 5

*In re Aiken Cty.*,
   725 F.3d 255 (D.C. Cir. 2013) ...................................................................... 4

*In re Sealed Case*,
   42 F.3d 1412 (D.C. Cir. 1994) .................................................................... 10

*Morrison v. Olson*,
   487 U.S. 654 (1998) .................................................................................. 5, 6

*Myers v. United States*,
   272 U.S. 52 (1926) ........................................................................................ 5

*Noel Canning v. NLRB*,
   705 F.3d 490 (D.C. Cir. 2013) ...................................................................... 5

*Oklahoma Press Pub. Co. v. Walling*,
  327 U.S. 186 (1946) ........................................................................8

*Peters v. United States*,
  853 F.2d 692 (9th Cir. 1988) .....................................................9, 10

*U.S. ex rel Kelly v. Boeing Co.*,
  9 F.3d 743 (9th Cir. 1993) ..............................................................8

*United States v. Golden Valley Elec. Ass'n*,
  689 F.3d 1108 (9th Cir. 2012) ....................................................8, 9

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950) ........................................................................9

**<u>Statutes</u>**

12 U.S.C. § 5481 .......................................................................14, 15

12 U.S.C. § 5491 ...........................................................................3, 4

12 U.S.C. § 5497 ........................................................................3, 4, 7

12 U.S.C. § 5512 ...............................................................................4

12 U.S.C. § 5517 ...........................................................1, 10, 11, 12, 13

12 U.S.C. § 5531 .........................................................................4, 12

12 U.S.C. § 5562 ........................................................................3, 4, 7, 9

12 U.S.C. § 5563 ........................................................................3, 4, 7

12 U.S.C. § 5564 ...............................................................................4

12 U.S.C. § 5565 ........................................................................3, 5, 7

12 U.S.C. § 5581 ........................................................................3, 4, 6

**<u>Constitutions</u>**

U.S. Const. amend. V ......................................................................8

U.S. Const. art. I, § 7, cl. 1 & § 8, cl. 1 .............................................7

U.S. Const. art. II, §§ 1 & 3 ..............................................................5

U.S. Const. art. II, §§ 1, 3. The CID ................................................1

**Rules**

Cal. R. Pro. Conduct 1-400 ...................................................................................... 15

**Regulations**

12 C.F.R. § 1080.5 ........................................................................................... 1, 9

**Other Authorities**

156 Cong. Rec. 105 at E1347-E1349 .......................................................... 11, 14

156 Cong. Rec. H5239 (2010) .......................................................................... 8

Consumer Financial Protection Act, Pub. L. 111-203, Title X, § 1051 *et seq..*, July 21, 2010 ............................................................................................................... 3

*The Federalist* No. 47 (J. Madison) ................................................................. 4

Respondent Seila Law, LLC ("Seila Law") submits this opposition to the *Petition to Enforce Civil Investigative Demand* (the "Petition") filed by the Consumer Financial Protection Bureau (the "CFPB") on June 22, 2017. (Doc. 1). For the reasons set forth below, the Court should deny the Petition.

# I.   INTRODUCTION AND SUMMARY OF RELEVANT FACTS

## A.   Summary Of Argument.

The Court should deny the Petition to enforce the Civil Investigative Demand ("CID") it issued to Seila Law for three reasons.

First, the CFPB is unconstitutional, rendering the CID unenforceable.  The CFPB has proclaimed itself "the government's primary enforcer of consumer financial laws." (*See* Declaration of Anthony R. Bisconti ("Bisconti Decl."), Ex. 8, at 1)). However, the CFPB is an independent agency headed by a single director, who may not be removed by the President except for cause. As set forth more fully below, the CFPB violates, among other things, Article II's requirement that "executive Power . . . be vested in a President of the United States of America" who "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1, 3. The CID, issued by an unconstitutional agency, is unenforceable and implicates protections of the Fourth and Fifth Amendments.

Second, even if the CFPB is constitutional, the CID exceeds the scope of the CFPB's authority because it fails to provide adequate notice and violates the practice of law exclusion to the CFPB's supervisory and regulatory powers. The CID's Notice of Purpose is impermissibly vague, and fails to adequately advise Seila Law of the "nature of the conduct constituting the alleged violation that is under investigation and the provisions of law applicable to such violation." 12 C.F.R. § 1080.5. The CID is nothing more than a continuation of the fishing expedition the CFPB previously attempted, seeking information to which it was not entitled. Additionally, the CFPB's supervisory and regulatory authority does not extend to any "activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law," subject to certain exceptions which as set forth below are inapplicable here. 12 U.S.C. § 5517(e)(1).

Finally, the CID is unduly burdensome and overbroad. The CID seeks a wide array of information and documents that facially have nothing to do with the CFPB's investigatory authority, some of which are protected from disclosure.

Accordingly, and as set forth more fully below, the Court should deny the Petition.

## B. Procedural History.

The Petition is the latest effort by the CFPB in its quixotic quest against Seila Law, which is now well into its second year. The CFPB failed in its prior effort to have this Court sanction and hold Seila Law in contempt for purported violation of a permanent injunction entered by this Court in *Consumer Financial Protection Bureau v. Morgan Drexen, et al.*, Case No. 8:13-01267-JLS (the "Morgan Drexen Case"). Seila Law was not a party in the Morgan Drexen Case, and the CFPB failed to establish that Seila Law had any notice of the Court's injunction, let alone that Seila Law violated it in any way.  While the Court granted the CFPB leave to conduct discovery with respect to Seila Law, Judge McDermott found that "[a] number of the CFPB's Document Requests are overbroad" and, in denying the CFPB's second motion to compel, found that CFPB's motion and claims against Seila Law were based solely on "unwarranted inferences and speculation."  (*See* Bisconti Decl., Exs. 1 (June 21, 2016 Order) & 2 (Sept. 6, 2016 Order)). Ultimately, the Court dismissed the contempt proceedings. (*Id.* Ex. 3 (minute order)).

However, the damage to Seila Law was done. The CFPB's misguided litigation efforts caused Seila Law substantial harm by, among other things, impairing Seila Law's ability to adequately represent its clients. (Bisconti Decl., Ex. 4 (Declaration of Aissac Aiono), at ¶¶ 3-7)).

Dissatisfied with the result, the CFPB continued its campaign against Seila Law. Shortly after the Court dismissed the Morgan Drexen Case, the CFPB served the CID on Seila Law. (Declaration of Jan Singelmann filed in support of the Petition (the "Singelmann Decl."), at ¶ 4, Ex. 1). The CID contains several interrogatories and document requests seeking a variety of sensitive and proprietary information regarding Seila Law—a law firm providing legal services to its clients—and its business. As with the CFPB's prior discovery

efforts directed at Seila Law, the CID is nothing more than an unwarranted and impermissible fishing expedition. Seila Law moved to set aside or modify the procedurally and substantively defective CID. (*See* Bisconti Decl., Ex. 5 (Petition to Set Aside CID)). Unsurprisingly, the CFPB director (the "<u>Director</u>") denied Seila Law's petition. (Singelmann Decl. at ¶¶ 7-8, Ex. 2). Seila Law continued to object to the procedural and substantive defects in the CID but, in hopes of avoiding further unwarranted litigation at the hands of the CFPB, provided responses to the CID subject to its ongoing objections.

As it had done with Seila Law's petition to modify or set aside the CID, the CFPB unilaterally determined that Seila Law's response to the CID was inadequate. (Singelmann Decl., ¶ 11, Ex 3). Seila Law disagreed. (*Id.* at ¶ 12). The Petition followed.

### C.    Brief Overview Of The CFPB.

Congress established the CFPB in 2010 as an independent agency headed by a single director (i.e., the Director). *See* Consumer Financial Protection Act, Pub. L. 111-203, Title X, § 1051 *et seq.*, July 21, 2010, 124 Stat. 2018 (the "<u>CFPA</u>"). Congress gave the CFPB broad authority "to prescribe rules or issue orders or guidelines pursuant to any Federal consumer financial law" previously administered by seven different agencies.  12 U.S.C. § 5581(a).  The CFPB may "conduct hearings and adjudication proceedings," "issue subpoenas," and pursue a broad range of legal and equitable relief, including "civil money penalties." *Id.* §§ 5563(a), 5562(b)(1), & 5565(a)(2).

The Director serves a five-year term. *Id.* § 5491(c)(1). The Director has been vested with power free from presidential supervision, because he is removable only "for inefficiency, neglect of duty, or malfeasance in office"—i.e., only for cause.   *Id.* § 5491(c)(3). The Director's term extends "until a successor has been appointed and qualified." *Id.* § 5491(c)(2). The Director also sets the CFPB's budget. *Id.* § 5497(a).

## II.    THE COURT SHOULD DENY THE PETITION

### A.    This Investigation Is Unconstitutional.

#### 1.    The CFPB Is Unconstitutionally Structured.

The CFPA places sweeping legislative, executive, and judicial power all "in the same

hands" of a single person (the Director) who is unaccountable to the democratic process—"the very definition of tyranny." *In re Aiken Cty.*, 725 F.3d 255, 264 (D.C. Cir. 2013) (*quoting The Federalist No. 47* (J. Madison)).

The Director is not answerable to the President because he is removable only for cause. *See* 12 U.S.C. § 5491(c)(3).[1] Congress cannot use its power over the purse to check the Director, because he has the sole power to fund his agency from the Federal Reserve System's operating expenses, and Congress is prohibited from reviewing the Director's budget determinations. *Id.* §§ 5497(a)(1) & 5497(a)(2)(C). Nor is the Director checked by the deliberative decision-making process of a multi-member commission structure or by a short tenure, as he serves a fixed five-year term. *Id.* § 5491(c)(1). The Director's power is vast, as he has broad authority to "prescribe rules or issue orders or guidelines pursuant to" 19 distinct consumer protection laws. *Id.* § 5581(a)(1)(A); *see also id.* § 5481(14). That power was previously exercised by seven different government agencies. *See id.* § 5581(b) (transferring to the CFPB "[a]ll consumer financial protection functions" previously exercised by the Board of Governors of the Federal Reserve, the Comptroller of Currency, the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, the National Credit Union Administration, and certain functions of the Department of Housing and Urban Development and the Federal Trade Commission).

The CFPB exercises legislative power by enacting regulations with the force of law, executive power by policing compliance with those regulations, and judicial power by adjudicating enforcement actions and imposing sanctions on those found to have violated those regulations. *See* 12 U.S.C. §§ 5512 (rulemaking authority for consumer finance law); 5531(b) (rulemaking authority for "unfair, deceptive, or abusive acts or practices"); 5562 (investigative authority); 5563 (adjudicative authority); 5564 (independent litigation and

---

[1] In fact, because the Director is removable only for cause and serves a five-year term that extends "until a successor has been appointed and qualified," 12 U.S.C. § 5491(c)(2), it is possible that a President could prevent a successor from ever installing a successor Director, or Congress could keep a Director in office by refusing to qualify a choice for a new Director.

enforcement authority; 5565 (power to impose sweeping legal and equitable relief and penalties).

This accumulation of power in the hands of one individual (the Director) is unprecedented and violates Article II of the Constitution and separation of powers, particularly because the Director controls a self-funding agency with wide-ranging executive powers. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 484 (2010). The CFPB is an unconstitutional agency, and its action and this Petition against Seila Law is void. *See, e.g.*, *Noel Canning v. NLRB*, 705 F.3d 490, 499, 514 (D.C. Cir. 2013), *aff'd on other grounds*, 134 S. Ct. 2550 (2014).

Under Article II of the Constitution, the Executive power is vested in the President, who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1 & 3. "The President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Free Enter. Fund*, 561 U.S. at 484. Accordingly, the President "must have the power to remove [executive officers] without delay." *Myers v. United States*, 272 U.S. 52, 134 (1926). Limitations on the President's removal power are presumptively unconstitutional, and the Supreme Court has recognized just two exceptions. First, Congress may limit the President's ability to remove a multimember "body of experts." *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 624 (1935). Second, Congress may limit the President's ability to remove inferior officers with limited tenure and a narrow scope of powers. *See Morrison v. Olson*, 487 U.S. 654, 671-73, 695-97 (1998).[2]

In *Free Enterprise Fund*, the Supreme Court considered whether Congress could restrict the President's "ability to remove a principal officer, who is in turn restricted in his

---

[2] The Supreme Court has since restricted *Humphrey's Executor* and *Morrison* to their facts, and their ongoing viability has been questioned. *See Free Enter. Fund*, 561 U.S. at 483 (declining to "reexamine" *Humphrey's Executor* or *Morrison* because the parties had not requested it to do so); *see also In re Aiken Cnty.*, 645 F.3d 428, 444, 446 (D.C. Cir. 2011) (Kavanaugh, J., concurring) ("The [*Free Enterprise Fund*] Court's rhetoric and reasoning are notably in tension with *Humphrey's Executor*.").

ability to remove an inferior officer." 561 U.S. at 484. The Court held that "dual for-cause limitations on the removal of [inferior officers] contravene the Constitution's separation of powers." *Id.* at 492. The Court observed that "[p]erhaps the most telling indication of the severe constitutional problem . . . is the lack of historical precedent for this entity." *Id.* at 505 (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 537 F.3d 667, 699 (D.C. Cir. 2008) (Kavanaugh, J., dissenting)).

The CFPB suffers from this lack of historical precedent. Unlike the Federal Trade Commission (the agency at issue in *Humphrey's Executor*), the Director is not intended to be "non-partisan" or to "act with entire impartiality," nor is he "called upon to exercise the trained judgment of a body of experts appointed by law and informed by experience." *Humphrey's Ex'r*, 295 U.S. at 624 (internal quotations and citation omitted). Nor is the CFPB headed by a multimember commission with its own internal checks—instead, it is headed by a single unchecked Director. And unlike the "independent counsel," the Director does not have "limited jurisdiction and tenure" or "lac[k] policymaking or significant administrative authority." *Morrison*, 487 U.S. at 691. Rather, the Director has a lengthy (potentially indefinite) tenure, broad authority, and sweeping enforcement powers.

Indeed, the United States recently identified only three occasions in which Congress has created agencies with a single head subject to for-cause removal. (*See* Bisconti Decl., Ex. 7, at 17). Those three agencies are the Office of Special Counsel, the Social Security Administration, and the Federal Housing Agency. *Id.* As the United States explained, "until relatively recently all independent agencies have been structured as multi-member commissions." *Id.* at 17. Moreover, these three single-director independent agencies have been controversial and, critically, cannot bring law enforcement actions against the public like the CFPB is able to do. *See id.* at 17-19.

The CFPB's structure is an unconstitutional departure from historical practice. The CFPB has broad authority "to prescribe rules or issue orders or guidelines pursuant to any Federal consumer financial law" previously administered by seven different agencies. *See* 12 U.S.C. § 5581(a). It can "conduct hearings and adjudication proceedings," and "issue

subpoenas." *Id.* §§ 5563(a) & 5562(b)(1). The CFPB also has the power to pursue a broad range of legal and equitable relief, including "civil money penalties," either in the district courts or on its own. *Id.* §§ 5565(a)(2) & 5563(a).

Compounding matters, the CFPB also operates free from Congressional supervision. The Director has sole authority to set the CFPB's budget and demand up to 12% of the Federal Reserve System's operating expenses. 12 U.S.C. § 5497(a)(2)(A). This demand is exempt from "review by the Committees on Appropriations of the House of Representatives and the Senate." 12 U.S.C. § 5497(a)(2)(C). Congress conferred this authority to the CFPB despite the fact that under the Constitution Congress has exclusive control over the power of the purse. *See* U.S. Const. art. I, § 7, cl. 1 & § 8, cl. 1. Combined with the limitations on the President's ability to remove the Director, the Director's power is virtually unchecked.

Under these circumstances, where the Director has the unilateral power to enact regulations, police compliance, and adjudicate enforcement actions and impose sanctions on the public, and is free from Congressional or Presidential supervision, this unprecedented concentration of power in the Director is unconstitutional. The public must be able to "ensure that those who wield[]" power are "accountable to political force and the will of the people." *Freytag v. Comm'r*, 501 U.S. 868, 884 (1991). The CFPB's unprecedented insulation from all democratic checks and accountability violate this constitutional mandate.

### 2.    The CFPB Must Be Stricken In Its Entirety.

The CFPB's numerous constitutional defects require striking the agency as a whole. The Court cannot render the CFPB's structure constitutional by striking the offending provisions from the CFPA; to do so would amount to rewriting the statute and creating a different agency than the one intended by Congress, which is well beyond the Court's proper judicial role. *See Free Enter. Fund*, 561 U.S. at 510; *see also Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (Court cannot simply strike a provision where the result would be an agency that would not "function in a manner consistent with the intent of Congress" or result in "legislation that Congress would not have enacted.") (emphasis

omitted). The Congressional record makes clear that with the CFPB, Congress intended to create an agency "completely independent, with an independently appointed director, an independent budget, and an autonomous rulemaking authority." 156 Cong. Rec. H5239 (2010). There is no indication that Congress would have given these powers to an agency under the President's control, so striking the offending provisions—even if limited to the "for cause removal" provision—will not cure the CFPB's constitutional defects.

### 3. The CID Is Unenforceable Because It Was Issued By An Unconstitutional Agency.

For the reasons set forth above, the CFPB is an unconstitutional agency. As an unconstitutional agency, the CFPB "lacks authority to bring this enforcement action." *FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993). The Court must deny the Petition because the CFPB's powers can "be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

Additionally, Seila Law's Fourth and Fifth Amendment rights will be violated if it is forced to comply with the CID and the CFPB is determined to be unconstitutionally structured. Enforcement of the CID will only be "consistent with the Fourth Amendment" if it is issued "'for a purpose Congress can order.'" *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1115 (9th Cir. 2012) (quoting *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946)). Because the CFPB is unconstitutional, it follows the CID was not issued for a purpose Congress can order, rendering it inconsistent with the Fourth Amendment. Likewise, the Fifth Amendment provides Seila Law with structural protection from being subject to federal power only by a constitutional agency. *See, e.g.*, *U.S. ex rel Kelly v. Boeing Co.*, 9 F.3d 743, 749-50 (9th Cir. 1993); *Free Enter. Fund*, 561 U.S. at 501 (calling this structural protection "critical"). By purporting to authorize the unconstitutional CFPB to enforce the CID against Seila Law, Congress violated this protection and deprived Seila Law of due process. U.S. Const. amend. V.

**B.     Even If Constitutional, The CID Exceeds The CFPB's Statutory Authority.**

**1.     The CID Does Not Provide Adequate Notice.**

The CID is also improper because it is overbroad and does not comport with statutory and regulatory provisions restricting the CFPB's investigatory powers. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (administrative subpoena unenforceable if investigation is not within agency's authority, demand is insufficiently definite, and information sought is relevant). Indeed, an administrative subpoena "will not be enforced if it is too indefinite or broad" and "may not be so broad as to be in the nature of a 'fishing expedition.'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988). This limitation is logical because administrative subpoenas (such as the CID at issue here) must "satisf[y] a Fourth Amendment reasonableness inquiry." *Golden Valley Elec. Ass'n*, 689 F.3d at 1113 (internal citations and quotations omitted).

Here, the CID is an unenforceable "fishing expedition" which fails to provide adequate notice of the purpose and scope of the CFPB's investigation. The CFPA provides that "[e]ach civil investigative demand shall state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation. 12 U.S.C. § 5562(c)(2). Additionally,

> Any person compelled to furnish documentary material, tangible things, written reports or answers to questions, oral testimony, or any combination of such material, answers, or testimony to the Bureau shall be advised of the nature of the conduct constituting the alleged violation that is under investigation and the provisions of law applicable to such violation.

12 C.F.R. § 1080.5.

The CID does not satisfy these notice requirements. The Notification of Purpose contained in the CID at issue here can be read as broadly as the "purpose of this investigation is to determine whether . . . unnamed persons are engaging in unlawful acts

or practices in the advertising, marketing, or sale of debt relief services or products . . . in violation of . . . any other Federal consumer financial law." Such a broad Notification of Purpose effectively provides no notice at all, and Seila Law has no notice of which alleged conduct is being investigated or which purported violations have occurred.

The CID's lack of notice additionally prevents a reviewing court from determining "whether the information demanded is 'reasonably relevant' and 'not too indefinite.'" *In re Sealed Case*, 42 F.3d 1412, 1418 (D.C. Cir. 1994); *see also Peters*, 853 F.2d at 700 (quashing administrative subpoena for failure of issuing agency to demonstrate that the subpoena was "no broader than necessary to achieve its purposes"). Here, the CFPB has not specified its purpose with respect to the CID, includes a laundry list of consumer financial laws, and demands that Seila Law provide information and documents relating to all clients for all legal services provided (whether or not they relate to debt relief services), Seila Law's past and present employees, and relationships with other attorneys in connection with their representation of Seila Law's clients. Accordingly, the CFPB is seeking information and documents well beyond the scope of any possible violation. *See Gen. Ins. Co. v. EEOC*, 491 F.2d 133, 136 (9th Cir. 1974); *In re Sealed Case*, 42 F.3d at 1418-19 (improper for agency to use "broad language . . . to describe [an administrative subpoena's] purpose" where it lacks "unfettered authority to cast about for potential wrongdoing."). The CID is not "narrow and specific" and should not be enforced.

### 2. The CID Violates The Statutory Practice Of Law Exclusion.

"It is undisputed that the regulation of the practice of law is traditionally the province of the states." *Am. Bar Ass'n v. F.T.C.*, 430 F.3d 457, 471 (D.C. Cir. 2005). Except under enumerated circumstances, "the Bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e)(1). This exception:

> shall not be construed so as to limit the exercise by the Bureau of any
> supervisory, enforcement, or other authority regarding the offering or

provision of a consumer financial product or service described in any subparagraph of section 5481(5) of this title—

**(A)** that is not offered or ***provided as part of, or incidental to, the practice of law***, occurring exclusively within the scope of the attorney-client relationship; or

**(B)** that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service.

*Id.* § 5517(e)(2) (emphasis added).

Seila Law is a law firm in the business of providing a variety of legal services, including but not limited to immigration, personal injury, criminal, and real estate. (*See* Bisconti Decl., Ex. 6 (www.seilalaw.com printout); *see also* Singelmann Decl., Ex. 3, at 4-5). As section 5517(e)(2) states, even if Seila Law provides services that could arguably be categorized as a "consumer financial product or service," such as debt relief, so long as this service or product is "offered or provided as part of, or incidental to, the practice of law," the CFPB does not have enforcement or investigatory authority over Seila Law.[3] The Congressional record further makes clear that Congress intended to "avoid <u>any possible overlap between the Bureau's authority and the practice of law</u>."[4]

Seila Law does not provide financial services to its clients independent from the practice of law. Because the practice of law and acts incidental to the practice of law are outside of the scope of the CFPB, the CID should be set aside in its entirety. Indeed, the CFPB's own evidence in support of the Petition confirms that it is impermissibly prying into Seila Law's business, relationships, and activities in providing legal services to its

---

[3] *See* 156 Cong. Rec. 105 at E1347-E1349 (2010)(statement of Hon. John Conyers, Jr.), available at https://www.congress.gov/crec/2010/07/15/CREC-2010-07-15-pt1-PgE1347.pdf (discussing how any overlap of regulatory authority would be harmful to the same clients the CFPB is tasked with protecting).

[4] *Id.* (emphasis added).

11

clients. For example, the CFPB acknowledges that its CID sought exemplars of retention agreements it uses for legal services, and that Seila Law provided five different templates—for legal services including debt relief, litigation, personal injury, and criminal matters. (*See* Singlemann Decl., Ex. 3, at 5). The CID likewise seeks information regarding the legal fees Seila Law charges its clients. (*Id.* at 4-5). The CFPB is plainly exceeding its authority and the practice of law limitation.

Furthermore, the CID is not limited to a "consumer financial product or service, or the offering of a consumer financial product or services." 12 U.S.C. § 5531(a). For example, the CFPB seeks information regarding the "types of *other services* the Company has offered or provided to consumers," the "[f]ees the Company charges to consumers for debt relief or *other services*," marketing methods for "debt relief or *other services*." (Singelmann Decl., Ex. 1, at 1) (emphasis added). Even if the CFPB could make an argument for seeking information regarding any purported debt relief services provided by Seila Law (which it lacks authority to do, as set forth above), there is clearly no basis for seeking information regarding unnamed "other services" the Seila Law firm provides to its clients.

While paragraph (3) of subsection 5517(e) provides that the practice of law exclusion "shall not be construed so as to limit the authority of the CFPB with respect to an attorney, to the extent such attorney is otherwise subject to any of the enumerated consumer financial laws or authorities transferred under subtitle F or H," that paragraph does not permit the CFPB to issue and enforce the CID here. *See Consumer Financial Protection Bureau v. The Mortgage Law Group, LLP*, 157 F. Supp. 3d 813, 823-25 (W.D. Wisc. 2016). In *The Mortgage Law Group* case, the CFPB argued that the exception to the practice of law exclusion in 12 U.S.C. §5517(e)(3) allowed it to regulate attorneys because it was exercising supervisory and regulatory authority under the Omnibus Act, which it inherited from the Federal Trade Commission. 157 F. Supp. 3d at 823. Because the Omnibus Act contained no practice of law exclusion, the CFPB argued that it had "express and unlimited authority to regulate attorneys" under the Omnibus Act. *Id.* at 824. As the court noted, the CFPB

fail[ed] to explain why Congress would prohibit [the CFPB] from regulating attorneys engaged in the practice of law and then create an exception that swallows that general prohibition. It is clear from the Consumer Protection Act that Congress did not want [the CFPB] to regulate the activities of attorneys if those activities were part of the practice of law. Interpreting the exception in § 5517(e)(3) as granting [the CFPB] authority to regulate an attorney's professional conduct violates the clear mandate against regulating attorneys engaged in the practice of law. The Supreme Court has emphasized that agencies must operate within the bounds of reasonable interpretation and reasonable statutory interpretation must account for both the specific context in which . . . language is used and the broader context of the statute as a whole. A statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

*Id.* (internal citations and quotations omitted).

Applying a reasonable statutory interpretation, § 5517(e)(3) simply means that, with respect to the transferred laws or authorities under subtitle F or H, a person who happens to be an attorney is not exempt from enforcement by the CFPB merely because of his or her status as an attorney, if the attorney is otherwise subject to those transferred authorities. However, subsection (e)(3) cannot mean that the CFPB is permitted to supervise and regulate an activity engaged in by an attorney as part of the practice of law if the authority comes from one of those transferred under subtitle F or H, because such a statutory interpretation would be unreasonable and directly "conflict with the Consumer Protection Act's general prohibition against regulating attorneys engaged in the practice of law." *Id.* at 823. This interpretation is further supported by the Congressional record:

1   Accordingly, our Committee worked to make clear that the new

2   Consumer Financial Protection Bureau established in the bill is not

3   being given authority to regulate the practice of law, which is regulated

4   by the State or States in which the attorney in question is licensed to

5   practice. At the same time, the Committee worked to clarify that this

6   protection for **the practice of law is not intended to preclude** the new

7   Bureau from **regulating *other* conduct** engaged in by **individuals *who***

8   ***happen to be* attorneys** or to be acting under their direction, ***if*** the

9   **conduct is not part of the practice of law or incidental to the practice**

10   **of law**.

11   156 Cong. Rec. 105 at E1347-E1349 (2010) (emphasis added).

12   For the foregoing reasons, the practice of law exclusion to the CFPB's authority

13   renders the CID invalid. Additionally, because the CID is seeking proprietary information

14   regarding Seila Law, work product, and confidential and/or privileged communications

15   with clients, it unreasonably invades Seila Law's relationships with its clients, requiring

16   denial of the Petition.

17   **C.    The CID Is Unduly Broad And Overly Vague And Seeks Privileged**

18   **Information And Documents.**

19   Independently, the Petition should be denied because the CID is unduly broad, overly

20   vague, and seeks protected information and documents. For example, Interrogatory No. 4

21   seeks information regarding "each attorney with whom You are associated or affiliated."

22   (Singelmann Decl., Ex. 1, at 1). However, as used in this interrogatory, "associated" and

23   "affiliated" are vague terms. The CFPA defines "affiliate" as "[a]ny person that controls, is

24   controlled by, or is under common control with another person," 12 U.S.C. § 5481(1), but

25   the CID appears to be using this term more expansively.

26   Similarly, the term "services" is overly broad and presumably, as discussed above,

27   the services provided by a law firm such as Seila Law incidental to the practice of law do

28   not fall within the CFPB's investigative purview. For example, Interrogatory No. 5 seeks a

14

description of the "services the Company has offered or provided to consumers, including . . . [t]he types of other services the Company has offered or provided to consumers . . . ." (Singelmann Decl., Ex. 1, at 1). The term "services" is exceedingly broad in this context, seeks information outside of the scope of the CFPB's enforcement power, and ventures into attorney work product and potential attorney-client privilege issues. Seila Law should not be required to provide any information related to any personal injury, criminal defense, or legal services not even arguably related to debt relief services. Similarly, Interrogatory No. 6 seeks Seila Law's marketing methods for "debt relief or other services." (*Id.*). However, attorney advertising is an area traditionally regulated by the states, and so not within the CFPB's supervisory or regulatory authority. *See, e.g.*, Cal. R. Pro. Conduct 1-400 (Attorney Advertising and Solicitation)*; see also The Mortgage Law Group, LLP*, 157 F.Supp.3d at 823-25. Request for Document No. 2 uses the term "services" in a similarly broad fashion seeking "[e]xemplars of each agreement relating to the services You provide or the fees for such services between You and consumers." (Singelmann Decl., Ex. 1, at 2). As described above, the services provided by a law firm can be numerous, varied, and outside of the supervisory or investigative reach of the CFPB. The CFPB would need to specify which services purportedly within its investigative authority it seeks information.

Likewise, the term "consumers" is broadly defined as "an individual or an agent, trustee, or representative acting on behalf of an individual." 12 U.S.C. § 5481(4). Interrogatory Nos. 5(b) and (c) seek a description of the "services the Company has offered or provided to consumers" and "[f]ees the Company charges to consumers for . . . other services." (Singelmann Decl., Ex. 1, at 1). Any Seila Law clients seeking legal services fall within the definition of "consumer" under section 5481.

Similarly, the CID's use of the term "agreement" is overly broad. Request for Document No. 3 calls for "a copy of all agreements with any attorney identified in response to Interrogatory 4." As discussed above, Interrogatory No. 4 seeks a list of all attorneys with whom Seila Law is "associated or affiliated." Because "associated" and "affiliated" are vague terms, any agreements with such individuals could potentially be endless. For

15

example, as written, if Seila Law's managing attorney sold his car to his law school mentor with whom he is associated through a book club, presumably, Interrogatory No. 4 seeks a copy of this agreement.

As written, the CID seeks information regarding Seila Law's legal services provided to clients, fees charged to clients, and agreements made with its clients for any number of undefined legal services. For example, the CID seeks "[e]xemplars of each agreement relating to services You provide or the fees for such services between You and consumers" and a "copy of each template that You have used in any communication with a consumer." (Singelmann Decl. Ex. 1, at 2). Even if the CFPB seeks only exemplars and templates in the requests for documents, as illustrated above, the interrogatories seeks information regarding the "services" Seila Law has provided its "consumers," fees charged for those services, and confidential client communications. Seila Law could not provide the information sought regarding its legal clients without potentially breaching duties of confidentiality, attorney-client privilege, or turning over protected work product.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny the Petition.


Dated:  July 21, 2017                    BIENERT, MILLER & KATZMAN, PLC

                                         By: /s/ Anthony R. Bisconti
                                             Thomas H. Bienert, Jr.
                                             Anthony R. Bisconti
                                             Attorneys for Respondent
                                             Seila Law LLC

402143-1

# CERTIFICATE OF SERVICE

I, Carolyn K. Howland, declare,

That I am a citizen of the United States and am a resident or employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

That I am employed by a member of the United States District Court for the Central District of California and at whose direction I caused service of: **OPPOSITION TO PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND** on the interested parties as follows:

**X   BY ELECTRONIC MAIL:**  by electronically filing the foregoing with the Clerk of the District Court using its ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies said parties in this case:

- **Leanne E Hartmann**
  leanne.hartmann@cfpb.gov
- **Amy N Radon**
  amy.radon@cfpb.gov,Richard.Omalley@cfpb.gov,jan.singelmann@cfpb.gov,richa.dasgupta@cfpb.gov,cheryl.goodwin@cfpb.gov
- **Jan E Singelmann**
  jan.singelmann@cfpb.gov,Richard.Omalley@cfpb.gov,amy.radon@cfpb.gov,Cheryl.Goodwin@cfpb.gov,Cara.Petersen@cfpb.gov

This certificate was executed on July 21, 2017, at San Clemente, California.

I certify under penalty of perjury that the foregoing is true and correct.

*/s/ Carolyn K. Howland /s/*
Carolyn K. Howland