JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>   Petitioner,<br><br>   v.<br><br>SEILA LAW, LLC,<br><br>   Respondent. | CASE NO. 8:17-cv-01081-JLS-JEM<br><br>**ORDER GRANTING IN PART PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND (Doc. 1)** |

Before the Court is the Consumer Financial Protection Bureau's (CFPB) Petition to Enforce Civil Investigative Demand. (Pet., Doc. 1.) Respondent Seila Law, LLC, has submitted an Opposition (Opp'n, Doc. 20), and the CFPB has filed a Reply (Reply, Doc. 21). After carefully reviewing the papers, the Court GRANTS IN PART the Petition.

## I. BACKGROUND

On February 27, 2017, the CFPB issued a Civil Investigative Demand to Seila Law, LLC, which included a notification of purpose, indicating:

> The purpose of this investigation is to determine whether debt relief providers, lead generators, or other unnamed persons are engaging in unlawful acts or practices in the advertising, marketing, or sale of debt relief services or products, including but not limited to debt negotiation, debt elimination, debt settlement, and credit counseling, in violation of Sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 USC §§ 5531, 5536; 12 U.S.C. § 5481 et seq., the Telemarketing Sales Rule, 16 C.F.R. § 310.1 et seq., or any other Federal consumer financial law. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

(CID, Exh. 1, Doc. 1-2.) On March 19, 2017, Seila Law filed a petition to set aside or modify the Civil Investigative Demand (Pet. Set Aside, Exh. 5, Doc. 20-1), which the CFPB Director denied on April 10, 2017 (CFPB Decision, Exh. 2, Doc. 1-2). The decision ordered Seila Law to "produce all responsive documents, items, and information within its possession, custody, or control that are covered by the CID" within ten days. (*Id.* at 5.) Seila Law asked for extension of time to comply with the CID, which the CFPB granted. (Singelmann Decl. ¶ 9, Doc. 1-2.)

On April 27, 2017, Seila Law submitted its response to the CID. (*Id.* ¶ 10.) A week later, the CFPB sent Seila Law a letter claiming that Seila Law's response improperly asserted general objections, failed to provide a privilege log for claims of attorney-client and attorney work product privilege, raised untimely claims of privilege, withheld relevant

documents based on assertions of "confidentiality," and otherwise provided incomplete or deficient responses. (CFPB May 4 Letter, Exh. 3, Doc. 1-2.) Seila Law responded in a letter dated May 22, 2017, challenging the "the enforceability of the CID" and "declin[ing] the CFPB's request at this time to provide further information or documents in response to the CID." (Seila Law Letter May 22, Exh. 4, Doc. 1-2.) In response, the CFPB filed this Petition to Enforce its Civil Investigative Demand. (Pet., Doc. 1.)

## II.  LEGAL STANDARD

"To determine whether to enforce an administrative subpoena, a court considers '[1] whether Congress has granted the authority to investigate; [2] whether procedural requirements have been followed; and [3] whether the evidence is relevant and material to the investigation.'" *CFPB v. Future Income Payments, LLC*, No. 8:17-CV-00303-JLS-SS, 2017 WL 2190069, at *2 (C.D. Cal. May 17, 2017) (quoting *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994)). If the agency has satisfied these "narrow" requirements, a court should enforce an administrative subpoena unless the respondent can demonstrate that compliance would pose an undue burden. *Id.*; *Children's Hosp. Med. Ctr. of N. California*, 719 F.2d at 1428. In response to a petition to enforce an administrative subpoena, a subpoenaed party is free to raise any constitutional challenges, which this Court reviews on a plenary basis. *Future Income Payments*, 2017 WL 2190069, at *2.

## III.  DISCUSSION

Seila Law objects to the enforcement of the CFPB's Civil Investigative Demand because, it asserts, (1) the CFPB is unconstitutionally structured, (2) the notification of purpose is inadequate, (3) the CFPB's practice of law exclusion would preclude any enforcement action, and (4) the CID is overly broad and seeks privileged information.[1] (Opp'n 10–16.) The Court considers each argument in turn.

---

[1] The Court does not separately consider Seila Law's fleeting Fourth and Fifth Amendment objections because they are entirely derivative of its other arguments. (*See* Opp'n at 8.)

### A. **CFPB's Constitutionality**

In *CFPB v. Morgan Drexen* and *CFPB v. Future Income Payments*, this Court addressed the same constitutional challenges that Seila Law raises. *See Future Income Payments*, 2017 WL 2190069, at *6–9; *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1086–92 (C.D. Cal. 2014). Like the respondent in *Future Income Payments*, Seila Law relies heavily on the arguments advanced in *PHH Corp. v. CFPB*, a vacated 2-1 decision from the D.C. Circuit that this Court continues to find unpersuasive. (*See* Opp'n at 3–7.) Notably, the *PHH* majority acknowledged, "'there is no meaningful difference in responsiveness and accountability to the President' between an agency headed by a commission and a director." *Future Income Payments*, 2017 WL 2190069, at *7 (quoting *PHH*, 839 F.3d at 32). "That is enough to end the inquiry" because the controlling standard enunciated in *Morrison v. Olson* is whether the CFPB Director's for-cause protection from removal "'interfere[s] with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II.'" *Id.* (quoting *Morrison v. Olson*, 487 U.S. 654, 690 (1988)). Even if *Morrison* were not controlling, there is no meaningful constitutional distinction that could be drawn between the CFPB and other director-led independent agencies, such as the Social Security Administration, and "no empirical evidence . . . establishes the superiority of either" director or multimember-led independent agencies. *Id.* at *5–8.

To the extent that Seila Law argues that the CFPB is unconstitutionally structured because the agency receives funding outside of the annual Congressional appropriations process (Opp'n at 7), the CFPB is no different than several other financial regulators, such as the Federal Reserve Board, the Office of the Comptroller of the Currency, and the Federal Deposit Insurance Corporation. *See* Adam J. Levitin, *The Consumer Financial Protection Bureau: An Introduction,* 32 Rev. Banking & Fin. L. 321, 343 (2013). In fact, unlike these other agencies, the CFPB's non-appropriated budget is capped by statute. *See id.* Further, "[t]he Appropriations Clause 'does not in any way circumscribe Congress from creating self-financing programs . . . without first appropriating the funds as it does in

typical appropriation and supplement appropriation acts.'" *Morgan Drexen*, 60 F. Supp. 3d at 1089 (quoting *AINS, Inc. v. United States*, 56 Fed.Cl. 522, 539 (Fed. Cl. 2003), *aff'd*, 365 F.3d 1333 (Fed. Cir. 2004), *abrogated on other grounds by Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011)). *Accord Am. Fed'n of Gov't Employees, AFL–CIO, Local 1647 v. Fed. Labor Relations Auth.*, 388 F.3d 405, 409 (3d Cir. 2004) ("Congress itself may choose . . . to loosen its own reins on public expenditure. . . . Congress may also decide not to finance a federal entity with appropriations.").

Even assuming that *Morrison* were not controlling *and* an independent agency could not be constitutionally headed by a director, the proper remedy would not be to refuse to enforce the CID. *Future Income Payments*, 2017 WL 2190069, at *9. In *Buckley v. Valeo*, for example, the Supreme Court held that the process for appointing commissioners to the Federal Election Commission trammeled upon the President's Appointments Power. 424 U.S. 1, 140 (1976). Yet, the Court held, "[i]nsofar as the powers confided in the Commission are essentially of an investigative and informative nature" the agency may execute them because Congress may properly establish offices that "perform duties . . . in aid of those functions that Congress may carry out by itself." *Id.* at 138–39. Because Congress unquestionably wields the subpoena power, *see, e.g., Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 504 (1975), the CFPB may lawfully execute this authority as well. *Future Income Payments*, 2017 WL 2190069, at *9; *see In re Application of President's Comm'n on Organized Crime*, 763 F.2d 1191, 1201–02 (11th Cir. 1985) (Fay, J., writing separately).

**B.     Notification of Purpose**

Seila Law further protests that the CID fails to provide sufficient notice about the purpose and contours of the CFPB's investigation. (Opp'n at 9–10.) As recounted already, the CID's notification of purpose provides:

> The purpose of this investigation is to determine whether debt relief providers, lead generators, or other unnamed persons are engaging in unlawful acts or practices in the advertising, marketing or sale of debt relief

> services or products, including but not limited to debt negotiation, debt elimination, debt settlement, and credit counseling, in violation of Sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 USC §§ 5531, 5536; 12 U.S.C. § 5481 et seq., the Telemarketing Sales Rule, 16 C.F.R. § 310.1 et seq., or any other Federal consumer financial law. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

(CID, Exh. 1.)

"The authority of an administrative agency to issue subpoenas for investigatory purposes is created solely by statute." *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 753 (9th Cir. 1993) (quoting *Peters v. United States*, 853 F.2d 692, 696 (9th Cir.1988)). Section 5562, which empowers the CFPB to issue civil investigative demands, provides that "[e]ach civil investigative demand shall state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." 12 U.S.C. § 5562(c)(2). The CFPB's implementing regulation likewise provides that a subpoenaed person "shall be advised of the nature of the conduct constituting the alleged violation that is under investigation and the provisions of law applicable to such violation." 12 C.F.R. § 1080.5. Yet, like every other administrative agency, the CFPB can define the contours of its investigation "quite generally" while still complying with its statutory obligations. *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1088, 1090 (D.C. Cir. 1992); *see FTC v. Carter*, 636 F.2d 781, 784, 787–89 (D.C. Cir. 1980) (approving of a very broad notification of purpose); *FTC v. Texaco, Inc.*, 555 F.2d 862, 868, 874 & n. 26 (D.C. Cir. 1977) (same).

A few examples illustrate when an agency crosses from defining the scope of its investigation broadly, which it may do, to violating its statutory notice requirements. In *Peters v. United States*, the Ninth Circuit held that, although the Immigration and Naturalization Service had a "broad subpoena and investigatory authority," it could not issue so-called "John Doe" subpoenas, which demand information about unknown targets

of an investigation from third parties. 853 F.2d 692, 696–99 (9th Cir. 1988). Similarly, in *In re Sealed Case (Admin. Subpoena)*, the D.C. Circuit affirmed the district court's determination that the Office of Thrift Supervision could seek information for two stated purposes, but determined that the agency had no authority to demand information for a third proffered purpose, namely to determine whether the targets of the investigation committed "other wrongdoing, as yet unknown." 42 F.3d 1412, 1415–19 (D.C. Cir. 1994). More recently, in *CFPB v. Accrediting Council for Independent Colleges & Schools*, the D.C. Circuit held that a notification of purpose stating that "the purpose of this investigation is to determine whether any entity or person has engaged or is engaging in unlawful acts and practices in connection with accrediting for-profit colleges" failed to identify adequately the conduct subject to the investigation. 854 F.3d 683, 690 (D.C. Cir. 2017). The D.C. Circuit reaffirmed that "a notification of purpose may use broad terms to articulate an investigation's purpose[,]" but found that "§ 5562(c)(2) mandates that the Bureau provide the recipient of the CID with sufficient notice as to the nature of the conduct and the alleged violation under investigation." *Id.* The notification of purpose provided no clue about what "unlawful acts and practices" were under investigation. *Id.* This shortcoming made it impossible to determine what the CFPB was investigating or whether any investigation was within the scope of its statutory authority. *Id.* at 690–91.

     Seila Law cleverly uses ellipses to suggest that the CID's notification of purpose provides no clue about the nature of the CFPB's investigation other than that the agency seeks "to determine whether . . . unnamed persons are engaging in unlawful acts or practices in the advertising, marketing, or sale of debt relief services or products . . . in violation of . . . any other Federal consumer financial law." (Opp'n at 9–10.) But what Seila Law omits through ellipses provides the fair notice that it supposedly seeks. The CID identifies specific types of businesses under investigation ("debt relief providers" and "lead generators"), the conduct subject to investigation ("advertising, marketing, or sale of debt relief services or products, including but not limited to debt negotiation, debt elimination, debt settlement, and credit counseling"), and specific statutes and regulations

that may have been violated (such as the Telemarketing Sales Rule, 16 C.F.R. § 310.1 *et seq.*). Seila Law's argument reduces to arguing that an administrative agency cannot use more general categories at the end of lists in a notification of purpose. That, however, is not the law. The D.C. Circuit has long affirmed the use of such phrasing, *see, e.g.*, *Texaco, Inc.*, 555 F.2d at 868 (approving of a notification of purpose that listed certain companies and then included the more general phrase "other persons and corporations"), and *Accrediting Council for Independent Colleges & School* held simply that a notification of purpose cannot include *only* broad catch-alls. Indeed, under the *ejusdem generis* and *noscitur a sociis* canons of construction, the broader categories included in this CID are limited based on the other items included in the lists. And, unlike in *Peters*, the CFPB is not seeking to enforce a John Doe subpoena; the CFPB seeks information *about* Seila Law *from* Seila Law. Accordingly, Seila Law's contention that the CID's notification of purpose is inadequate lacks merit.

### C. <u>Practice of Law Exclusion</u>

Seila Law next contends the CFPB's practice of law exclusion would bar any enforcement action against it. (Opp'n at 10–14.) This Court recently rejected this argument in the related case *CFPB v. Howard*. *See* Order Denying Defendants' Motion to Dismiss at 5–8, Doc. 42, Case No. 8:17-cv-00161-JLS-JEM (May 26, 2017). To summarize, section 5517(e)(3) ("Paragraph 3") provides that the Consumer Financial Protection Act's general prohibition against the CFPB regulating the practice of law "shall not be construed so as to limit the authority of the Bureau with respect to any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the authorities transferred under subtitle F or H." 12 U.S.C. § 5517(e)(3). Section 1100C in subtitle H of the Consumer Financial Protection Act empowers the CFPB to enforce the Telemarketing Sales Rule, a regulation promulgated by the FTC that does not contain an exception for those engaged in the practice of law. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, § 1100C, 124 Stat. 1376, 2111 (2010); *see also* Telemarketing Sales Rule, 75 Fed. Reg. 48458, 48467–69 (Aug. 10,

2010) (declining to make an exception for the practice of law in the TSR amendments). As such, the practice of law exclusion does not bar the CFPB from enforcing the Telemarketing Sales Rule against Seila Law. *See FTC v. Lanier Law, LLC*, 194 F. Supp. 3d 1238, 1283 (M.D. Fla. 2016). While Seila Law references a district court that adopted a contrary interpretation based on policy concerns (Opp'n at 12–13), this Court opts instead to follow the plain meaning of Paragraph 3, which unmistakably empowers the CFPB to take enforcement actions against attorneys under the transferred authorities insofar as those transferred authorities implicate the practice of law. Congress included the practice of law exclusion to ensure that the CFPB did not employ its general authority over unfair, deceptive, and abusive practices to regulate the practice of law. Order Denying Defendants' Motion to Dismiss at 7, Doc. 42, Case No. 8:17-cv-00161-JLS-JEM (May 26, 2017). But, to the extent that Congress enacted other statutes that already affect the legal field, nothing in the practice of law exclusion suggests Congress intended a massive curtailment of federal enforcement authority. *Id.*

Seila Law's contrary interpretation—that Paragraphs 3 merely means that "an attorney is not exempt from enforcement by the CFPB merely because of his or her status as an attorney . . . ." (Opp'n at 13)—would render it entirely superfluous because section 5517(e)(2) ("Paragraph 2") already accomplishes this. *See* 12 U.S.C. § 5517(e)(2) (allowing the CFPB to regulate attorneys' provision of covered products that are "not offered or provided as part of, or incidental to, the practice of law" or that are provided to a consumer "who is not receiving legal advice or services from the attorney in connection with such financial product or service"). "A cardinal principle of statutory construction" teaches that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Paragraph 3 offers a classic instance where the canon against surplusage should be applied: Seila Law's construction would mean, quite improbably, that Congress fashioned an entirely redundant statutory provision immediately following the provision

that would render that provision redundant. Because courts should resist ascribing such odd statutory drafting to Congress and the plain language supports the CFPB's construction, the Court concludes that the practice of law exclusion would not bar an enforcement action by the agency.

### D. Overbreadth and Vagueness

Seila Law finally challenges a few of the CID's interrogatories and requests for documents as overbroad or vague. (Opp'n at 14–16.) The CFPB responds that Seila Law has waived these arguments, and that the CID seeks only relevant information. (Reply at 13–16.)

"Courts 'generally will not entertain a challenge to a subpoena that was not first brought before the [administrative agency].'" *NLRB v. Uber Techs., Inc.*, 216 F. Supp. 3d 1004, 1007 (N.D. Cal. 2016) (quoting *NLRB v. Fresh & Easy Neighborhood Mkt., Inc.*, 805 F.3d 1155, 1159 (9th Cir. 2015)). This administrative exhaustion requirement "is grounded in important prudential considerations, such as providing an agency with the opportunity to correct its mistakes before it is haled into court and ensuring that parties do not employ judicial review to weaken an agency's administrative processes." *Seraji v. Gowadia*, No. 8:16-CV-01637-JLS-JCG, 2017 WL 2628545, at *3 (C.D. Cal. Apr. 28, 2017) (Staton, J.); *see Fresh & Easy Neighborhood Mkt., Inc.*, 805 F.3d at 1159 (noting that the exhaustion requirement reflects "deference to the Board's interest and expertise in managing the cases before it"). Courts have excused a subpoenaed party's failure to exhaust its administrative remedies where it raises a constitutional challenge or identifies "exceptional circumstances." *Uber Techs., Inc.*, 216 F. Supp. 3d at 1007; *see EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 964–67 (D.C. Cir. 1999); *EEOC v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1064 (5th Cir. 1979).

Seila Law raised its overbreadth and vagueness objections to certain interrogatories and requests for documents in its petition to set aside or modify the CID. (Pet. Set Aside, Exh. 5.) The CFPB declined to consider these arguments, reasoning that Seila Law failed to comply with 12 C.F.R. § 1080.6 because it did not "submit specific modification

requests in writing" during the meet-and-confer process. (CFPB Decision at 4–5, Exh. 2.) The applicable regulation, however, does not provide that a party waives its challenges by failing to submit proposed written modifications during the meet-and-confer process; all it says is that, in a petition to set aside a CID, the agency "will consider only issues raised during the meet-and-confer process." 12 C.F.R. § 1080.6(c)(3). Because neither side suggests that Seila Law failed to raise its specific concerns during the meet-and-confer process, Seila Law did not waive these objections.

Seila Law contends that the CID's request for information about "other services," or simply "services," could be construed to encompass information related to the firm's immigration, personal injury, criminal defense, and real estate practices that have nothing to do with the stated purposes of the subpoena. (Opp'n at 15–16; *see also* Opp'n at 11–12.) The Court agrees. The CID does not define what "other services" are, and the CFPB has not articulated how any investigation into Seila Law's immigration, personal injury, criminal defense, or real estate practices would not be barred by the CFPB's practice of law exclusion. The Court will accordingly limit the definition of "other services" in Interrogatories Nos. 5 and 6 to the areas of inquiry identified in the CID that would not be barred by the CFPB's practice of law exclusion, specifically the "advertising, marketing, or sale of debt relief services or products," including "debt negotiation, debt elimination, debt settlement, and credit counseling." (CID, Exh. 1.) Similarly, the mention of "services" in Interrogatory No. 5 and Requests for Documents Nos. 2 and 4 shall be limited to the "advertising, marketing, or sale of debt relief services or products," including "debt negotiation, debt elimination, debt settlement, and credit counseling." By narrowing the definition of "other services" and "services," the Court also ensures that the definition of "consumer" will not sweep in information unrelated to the stated lawful purpose of this investigation.[2] (*See* Opp'n at 15.)

---

[2] Seilia Law contends that the CFPB cannot seek information about attorneys' marketing of "debt relief and other services," because states have traditionally regulated attorney advertising. (Opp'n at 15.) But the Telemarketing Sales Rule bars certain marketing practices for debt relief

11

Separately, Seila Law complains that the term "affiliated" in Interrogatory No. 4—and by cross-reference Request for Documents No. 3—is vague or overbroad. (Opp'n at 14–15.) As the CFPB has not defined the term, there is no reason to suggest that the word should not take its commonsense meaning in this context—specifically, those who had a close professional connection or association with Seila Law or Aissac Seila Aiono during the relevant period. *See, e.g.*, Merriam-Webster's Collegiate Dictionary 21 (11th ed. 2003). Under this plain-meaning interpretation, the Court rejects Seila Law's suggestion that the word "affiliated" is vague or overbroad. The requested information is necessary, for instance, to determine whether "the Howard defendants . . . transferred the debt relief business, including the files of former Morgan Drexen consumers, to Seila Law." (Notice of Related Case at 3, Doc. 5.)

Finally, Seila Law claims that the CID seeks information protected by the attorney-client and work product privileges. (Opp'n at 16.) But, like in any civil litigation, Seila Law must first make an adequate privilege log (*see* CID at Instruction D, Exh. 1), which it has not done yet. Thus, with the narrowing construction, the Court finds that the CID seeks only relevant information and is not vague.

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, CFPB's Petition is GRANTED IN PART. Seila Law is hereby COMPELLED to comply with the CID within ten (10) days of this Order or at a later date as may be established by this Court or the CFPB, except for the following limitations to the definition of "other services" and "services" in the CID. "Services" and "other services" shall be construed to mean the "advertising, marketing, or sale of debt

---

services when offered through telemarketing, *see* 16 C.F.R. § 310.4(a)(2), and Paragraph 3 commits the CFPB to enforcing the TSR, so Seila Law's contention is unavailing.

12

relief services or products," including "debt negotiation, debt elimination, debt settlement, and credit counseling."

DATED: August 25, 2017

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE